United States Courts
Southern District of Texas
FILED

*March 16, 2026*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.  4:26-cr-135** |
| | § | |
| **ALFONSO WILSON,** | § | |
| **Defendant.** | § | |

**INFORMATION**

THE UNITED STATES CHARGES:

**COUNT ONE**
(Conspiracy – 18 U.S.C. § 371)

**Introduction**

At times material to this Information:

1.      Petróleos Mexicanos ("PEMEX") was the state-owned oil company of Mexico. PEMEX and its wholly owned subsidiaries were wholly owned and controlled by the government of Mexico and performed functions that Mexico treated as its own. PEMEX, together with its subsidiaries and affiliates, was responsible for the exploration, production, refining, transportation, and trade in energy resources in Mexico. PEMEX Exploración y Producción ("PEP") was PEMEX's wholly owned exploration and production subsidiary. PEMEX and its wholly owned subsidiaries, including PEP, were "instrumentalities" of a foreign government, and officers and employees of PEMEX and its wholly owned subsidiaries, including PEP, were "foreign officials," as those terms are used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

2.      "Equipment Company," an entity whose identity is known to the United States, was a company based in the Southern District of Texas. Equipment Company supplied equipment to

-1-

PEMEX, among other customers. In or around December 2021, PEMEX awarded Equipment Company a contract for approximately $540 million to supply equipment to PEMEX ("December 2021 Contract"). Equipment Company was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

3.      "Foreign Official," an individual whose identity is known to the United States, was a senior executive at PEP from at least in or around December 2018 until at least in or around February 2021. On behalf of PEMEX, Foreign Official was involved in overseeing the negotiation and awarding of the December 2021 Contract. Foreign Official was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

4.      "Intermediary Company-1," an entity whose identity is known to the United States, was a company based in Mexico. Equipment Company hired and paid Intermediary Company-1 commissions in connection with sales Equipment Company made to PEMEX, including under the December 2021 Contract. Intermediary Company-1 was an "agent" of Equipment Company, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

5.      "Intermediary Company-2" an entity whose identity is known to the United States, was a company based in the Southern District of Texas. Intermediary Company-1 hired and paid Intermediary Company-2 commissions in connection with sales Equipment Company made to PEMEX, including under the December 2021 Contract.

6.      Defendant **ALFONSO WILSON** ("**WILSON**") was a dual citizen of the United States and Mexico and a resident of the Southern District of Texas who owned and controlled Intermediary Company-2. **WILSON**'s responsibilities included, among other things, liaising with Foreign Official as an agent of Equipment Company in connection with obtaining the December 2021 Contract for Equipment Company. **WILSON** was a "domestic concern" and an "agent" of a

"domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

7.      "Co-Conspirator-1," an individual whose identity is known to the United States, owned and controlled, in whole or in part, Intermediary Company-1. Co-Conspirator-1 was an "agent" of Equipment Company, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

8.      "Co-Conspirator-2," an individual whose identity is known to the United States, was a senior executive at Intermediary Company-1. Co-Conspirator-2 was an "agent" of Equipment Company, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

9.      "Co-Conspirator-3," an individual whose identity is known to the United States, was a senior executive at Equipment Company and a resident of the Southern District of Texas. Co-Conspirator-3 was a "domestic concern" and an "officer," "employee," and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

10.      "Co-Conspirator-4," an individual whose identity is known to the United States, was a senior executive at Equipment Company and, since in or around September 2017, a resident of the Southern District of Texas. Co-Conspirator-4 was "domestic concern" and an "officer," "employee," and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

11.      "Intermediary Company-3," an entity whose identity is known to the United States, was a company based in Mexico. Equipment Company hired and paid Intermediary Company-3 as a subcontractor for the December 2021 Contract. Intermediary Company-3 was an "agent" of

Equipment Company, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

12.    "Co-Conspirator-5," an individual whose identity is known to the United States, owned and controlled Intermediary Company-3. Co-Conspirator-5 was an "agent" of Equipment Company, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

## The Conspiracy

13.    Beginning in or around January 2020 and continuing through at least in or around 2025, in the Southern District of Texas and elsewhere, the defendant

**ALFONSO WILSON**,

together with Co-Conspirator-1, Co-Conspirator-2, Co-Conspirator-3, Co-Conspirator-4, Co-Conspirator-5, and others known and unknown, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree together and with each other to commit offenses against the United States, that is, being a domestic concern and an officer, employee, and agent of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities,

-4-

in order to assist Equipment Company, **WILSON**, and others in obtaining and retaining business for and with, and directing business to, Equipment Company, Intermediary Company-1, Intermediary Company-2, and others, in violation of the FCPA, Title 15, United States Code, Section 78dd-2.

### Purpose of the Conspiracy

14.     The purpose of the conspiracy was for **WILSON** and his co-conspirators to enrich themselves and others by obtaining and retaining the December 2021 Contract with PEMEX for Equipment Company through corrupt and fraudulent means, including by offering and paying bribes to Foreign Official.

### Manner and Means of the Conspiracy

15.     The manner and means by which **WILSON** and his co-conspirators sought to accomplish and did accomplish the purposes of the conspiracy included, but were not limited to, the following, while in the Southern District of Texas and elsewhere:

16.     In order to obtain and retain business for and on behalf of Equipment Company, **WILSON**, together with others, including Co-Conspirator-1, Co-Conspirator-2, Co-Conspirator-3, Co-Conspirator-4, Co-Conspirator-5, would and did discuss:

     a.     the need to provide things of value to Foreign Official to help secure, among other things, the December 2021 Contract;

     b.     the particular things of value to provide to Foreign Official; and

     c.     the manner and means by which things of value would be provided.

17.     In or around 2020, **WILSON**, together with others, including Co-Conspirator-1, Co-Conspirator-2, and Co-Conspirator-3, agreed that Equipment Company would offer to pay Foreign Official millions of dollars in bribes in exchange for Foreign Official using his official

position to assist Equipment Company obtain and retain business with PEMEX, including the December 2021 Contract. Subsequently, having agreed to do so with co-conspirators, **WILSON**, for the benefit of Equipment Company, offered a substantial amount in bribes to Foreign Official. The bribes would be paid to Foreign Official through Intermediary Company-1. In or around late 2021, Co-Conspirator-3, Co-Conspirator-4, Co-Conspirator-5, and others decided instead to pay the bribes for the benefit of Foreign Official through Intermediary Company-3 and Co-Conspirator-5.

18.     Intermediary Company-1 paid **WILSON**, through Intermediary Company-2, a total of $415,800 in commissions in connection with the December 2021 Contract.

### Overt Acts

19.     In furtherance of the conspiracy and to achieve the objects thereof, **WILSON** and at least one of the co-conspirators committed and caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

a.     On or about May 22, 2020, in a WhatsApp chat thread among **WILSON**, Co-Conspirator-1, Co-Conspirator-2, and Co-Conspirator-3, Co-Conspirator-3 sent the following WhatsApp text message (translated into English): "As always, [Foreign Official] he promises, and then never delivers. This guy told us in February that he was going to send the letter of intent."

b.     On or about May 22, 2020, in the same WhatsApp chat thread referenced in paragraph 20a., Co-Conspirator-1 responded (translated into English) that the group should "remove the commissions" from Foreign Official.

c.     On or about May 22, 2020, in the same WhatsApp chat thread referenced in paragraph 20a., **WILSON**, replied (translated into English) "Today I check with [Foreign Official]."

d.	On or about July 22, 2020, in a WhatsApp chat thread among **WILSON**, Co-Conspirator-1, Co-Conspirator-2, and Co-Conspirator-3, **WILSON**, sent the following text message (translated into English): "[Foreign Official]'s response to my message on Monday. 'Wilson, we are still interested in purchasing the drills but we have not authorized any purchases until COVID is controlled.'"

e.	On or about July 22, 2020, in the same WhatsApp chat thread referenced in paragraph 20d., Co-Conspirator-3 replied (translated into English) "I also think that bringing out [Foreign Official] with what he knows is not very healthy, I think we should tell him that we will go up a step, but without damaging his interest. I do believe [Foreign Official] must be kept inside . . . [Foreign Official] is not an enemy today, in fact I think he is still the best ally in this business."

f.	On or about July 31, 2023, pursuant to an invoice submitted by Intermediary Company-2, Intermediary Company-1 wired **WILSON**, through Intermediary Company-2, $198,000, in connection with the December 2021 Contract.

g.	On or about September 12, 2023, pursuant to an invoice submitted by Intermediary Company-2, Intermediary Company-1 wired **WILSON**, through Intermediary Company-2, $198,000, in connection with the December 2021 Contract.

h.	On or about November 3, 2023, pursuant to an invoice submitted by Intermediary Company-2, Intermediary Company-1 wired **WILSON**, through Intermediary Company-2, $19,800, in connection with the December 2021 Contract.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

20.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to the defendant, that in the event of his conviction of Count One of this Information, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

## MONEY JUDGEMENT AND SUBSTITUTE ASSETS

21.    The United States will seek the imposition of a money judgment against the defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States may seek to forfeit any other property of the defendant in substitution.


John G.E. Marck
Acting United States Attorney
Southern District of Texas

Lorinda I. Laryea
Chief, Fraud Section
Criminal Division
United States Department of Justice


By: *Brad Gray*
Brad Gray
Assistant United States Attorney
Southern District of Texas

*Lindsey D. Carson*
Lindsey D. Carson
Abdus Samad Pardesi
Paul G. Ream
Trial Attorneys
Criminal Division, Fraud Section